

# THE ATTORNEY GENERAL

## OF TEXAS

### AUSTIN 11, TEXAS

PRICE DANIEL
ATTORNEY GENERAL

August 28, 1951

Hon. Coke R. Stevenson, Jr.          Opinion No. V-1259
Administrator
Texas Liquor Control Board           Re: Is person owning in-
Austin, Texas                             terest in business
                                          holding beer distrib-
                                          utor's license eligi-
                                          ble for employment by
                                          Texas Liquor Control
Dear Sir:                                 Board.

        Your request for an opinion asks whether a person
who owns an interest in a beer distributing business con-
ducted under a license issued by the Texas Liquor Control
Board is eligible for employment by the Board.

        Article 666-5, V.P.C., in so far as pertinent to
your inquiry, provides that:

        "No person shall be eligible for appoint-
    ment nor shall hold the office of member of the
    Board, nor be appointed by the Board, nor hold
    any office or position under the Board, who has
    any connection with any association, firm, person,
    or corporation engaged in or conducting any alco-
    holic liquor business of any kind or who holds
    stocks or bonds therein, or who has pecuniary in-
    terest therein, nor shall any such person receive
    any commission or profit whatsoever from or have
    any interest whatsoever in any purchase or sales
    of any alcoholic liquors. . . .

        "The Board or Administrator shall appoint
    all necessary clerks, stenographers, inspectors,
    and chemists, and other employees to properly
    enforce the provisions of this Act.

        "No person shall be eligible for any ap-
    pointment who has any financial connection what-
    ever with any person engaged in or conducting
    any liquor business of any kind, or who holds
    stock or bonds therein, or who has any pecuniary
    interest therein, nor shall any such person re-
    ceive any commission or profit whatever from, or

have any interest whatsoever in, the pur-
chases or sales made by persons authorized
by this Act to manufacture, purchase, sell,
or otherwise deal in the liquor business."
(Emphasis supplied throughout opinion.)

Your question turns on whether a beer business
is a liquor business within the meaning of Article 666-5.
That question arises by reason of the definition of
"liquor" contained in Article 666-3a, V.P.C., that:

"'Liquor' shall mean any alcoholic bev-
erage containing alcohol in excess of four
(4) per centum by weight, unless otherwise
indicated. . . ."

"Any definition contained herein shall
apply to the same word in any form."

The definition of "beer" contained in Article 667-1,
V.P.C., is:

"The term 'beer' means a malt beverage
containing one-half of 1% or more of alcohol
by volume and not more than 4% of alcohol by
weight, and shall not be inclusive of any
beverage designated by label or otherwise by
any other name than beer."

"Alcoholic Beverage" is defined in Article 666-3a to mean

". . . alcohol and any beverage containing
more than one-half of one per cent ($\frac{1}{2}$ of 1%)
of alcohol by volume which is capable of use
for beverage purposes, either alone or when
diluted."

If these definitions control and apply to the word liquor,
as used in Article 666-5, then a strictly beer business
would not be a liquor business within the provisions of
this Article and a person owning an interest in a beer
business would not by reason of Article 666-5 be ineligi-
ble for employment by the Board.

We are of the opinion that the word "liquor,"
as used in the quoted portion of Article 666-5, is not
limited to the technical definition as contained in
Article 666-3a, but is used as generally descriptive of
those businesses dealing in alcoholic beverages which

the Texas Liquor Control Act subjects to regulations by the Texas Liquor Control Board.

The eligibility provisions in Article 666-5 were contained in the first comprehensive regulatory act adopted in 1935. H. B. 77, Acts 44th Leg., 2nd C.S. 1935, ch. 467, p. 1795. While substantially the same technical definitions of "liquor" and "beer" were therein also contained, the word "liquor" was used at times in the technical sense of the definition and at other times in a general sense meaning beverages containing lesser amounts of alcohol. Subsequent amendments have substituted the broader term "alcoholic beverages" for the word "liquor" in many provisions of the Act, but there is no indication that the meaning of the word "liquor" in Article 666-5, where it remains, has been changed. The meaning is to be determined from the context in which it is used, and where the context indicates the broader significance the meaning, to use the language of the definition is, "otherwise indicated." Examination of the 1935 Act illustrates the original significance of the term "liquor business of any kind" as contained therein to include a beer business, which meaning we conclude is the same today.

The conclusion indicated is borne out in the caption of the 1935 Act. That Act regulated all kinds of alcoholic beverages including beer, yet the caption described it as "regulating the traffic in alcoholic liquors," as creating a "Liquor Control Board," as providing for local option elections as to the sale of "intoxicating liquors having various alcoholic contents," and as providing for permits to engage "in the various phases of the liquor traffic." Nowhere in the caption is "beer" mentioned, yet elaborate regulation of beer traffic is established in the Act. It was obviously considered by the Legislature as one of the "kinds" of "liquor" business. The phrase "liquor business of any kind" bears close resemblance to the phrases used in the caption to indicate regulation of the "various phases of the liquor traffic" and sale of "liquors having various alcoholic contents," which obviously included "beer".

Again, in the emergency clause, traffic in beer was certainly contemplated by the general statements of the need for early effectiveness of the Act. It refers to the adoption of the constitutional amendment legalizing the sale of "liquor" in wet areas and recites the fact that traffic in "liquor" was then unregulated. Both statements

applied in fact to beer sales and traffic.

The word "liquor" was used exclusively through-out Section 6 of Article I of the original Act, which enumerated the general duties and responsibilities of the Board, some of which applied to the beer business. Section 23 of Article I defining "wet" and "dry" areas, spoke of "liquor" only but obviously applied to areas where "beer" sales were permitted or prohibited.

The sections dealing with local option elections and particularly with ballots used the word "liquor" in the sense of an alcoholic beverage and left its application to beer to depend on the designated alcoholic content.

These illustrations suffice to evidence the fact that the word "liquor," especially when used in the provisions of more general application, usually carried the generic connotations of the phrase "alcoholic beverages" and was quite often qualified by a statement of the particular alcoholic content to which the particular provision applied.

Finally, and quite significantly, the original Act was scrupulously specific in prescribing absolute independence of the regulatory agency and the industry over which it had jurisdiction. Not only was the eligibility provision repeated in Section 5 of Article I but Section 21a of Article II of the original Act made the following specific provisions designed to guarantee that the Board and its employees would not participate in political elections.

"Sec. 21a. It shall be unawful /sic/ for any person paid a salary or per diem or receiving any compensation out of the appropriation made or taxes collected under the terms of this Act to engage in or take part in any political campaign. By engaging in a political campaign or taking part in a political campaign is meant and shall include distributing circulars, hand-bills, posting pictures, handing out cards, making speeches or soliciting support for or opposing the election of any candidate for any public office. Any such employee engaging in such inhibited and unlawful conduct shall be subject to removal from his position and restraint from reemployment in such department for a period of one (1) year by a judgment in the

district court of the county wherein such
unlawful activity occurred, either in whole
or in part. Any ten (10) or more qualified
resident voters of such county shall have
authority to institute a suit in a district
court of such county praying for the removal
of such employee from such department, citing
such employee and any member of the Board,
and, upon final hearing, the allegations of
the petition being sustained, the judgment
shall be to discharge the employee and to re-
strain the department from re-employing such
employee for a period of one (1) year from
the date of the judgment.

"In like manner, any member of the Board
who shall violate this section or who shall
solicit, ask or suggest to any employee, either
directly or through any other person, that such
employee violate such section, then and in that
event such Board member may be removed by quo
warranto proceedings in the district court upon
the relation of any ten (10) qualified voters
of the county in which such violation occurred.
The writing of a letter into any county where-
in such letter violates or suggests, asks or
solicits a violation of this law shall consti-
tute sufficient grounds for removal in any
county through which such letter passed or in-
to which such letter passed."

This section was obviously designed to assure im-
partial administration and activity by the regulatory body
and its personnel. The whole scheme for setting up the
Liquor Control Board was to create an independent agency
whose actions would not be influenced by a financial inter-
est in the industry over which it exercised jurisdiction,
and who would be expressly prohibited from exerting politi-
cal influence in furtherance of or opposition to the inter-
ests of such industry.

The principle promulgated in Article 666-5 is not
novel to Texas administrative law. See Article 4681, V.C.S.,
declaring that no person who is directly or indirectly in-
terested in any insurance company may be a member of the
Board of Insurance Commissioners or a clerk in the Insurance
Department.

We are constrained to attribute to the Legis-
lature a consistent policy in regard to such eligibility
provisions, where such consistency finds support in the
law. You are, therefore, advised that one who owns an
interest in a licensed beer distributing business is in-
eligible for employment by the Texas Liquor Control Board.

## SUMMARY

One who owns an interest in a licensed
beer distributing business is ineligible for
employment by the Texas Liquor Control Board.
Art. 666-5, V.P.C.

APPROVED:

Ned McDaniel
State Affairs Division

Everett Hutchinson
Executive Assistant

Charles D. Mathews
First Assistant

Yours very truly

PRICE DANIEL
Attorney General

By *V.H. Taylor*
Assistant